UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KELLI MCGEHEE ET AL | CIVIL ACTION |
| VERSUS | NO: 08-3851 |
| STATE FARM GENERAL INSURANCE COMPANY, ET AL | SECTION: "C" (5) |

## ORDER

Before the Court are motions for summary judgment by defendants State Farm General Insurance Company ("State Farm") (Rec. Doc. 102) and Scott Catalanotto ("Catalanotto") (Rec. Doc. 101). State Farm has also filed a motion to strike (Rec. Doc. 127) regarding plaintiffs Kelli McGeehee ("McGehee") and Myra Nobles's (Nobles) oppositions to the summary judgment motions. The motions are before the Court on the briefs without oral argument. Having reviewed the record, memoranda of counsel, and the law, the Court DENIES the Motion to Strike and GRANTS the Motions for Summary Judgment for the following reasons.

## I. Background

Plaintiffs were employees at a Bogalusa, Louisiana, State Farm Insurance office, originally run by Lance Sceroler ("Sceroler"). Plaintiffs were employed directly by Sceroler. In December, 2006, Sceroler left the office, and State Farm offered Catalanotto, a licensed insurance agent, the opportunity to replace him starting February 1, 2007. Presumably to ensure

continuity in the office, State Farm hired the plaintiffs directly on a two month temporary contract for the interim period, December 1, 2006 through January 31, 2007, which terminated when Catalanotto officially took over pursuant to a Term Independent Contractor Agreement ("TICA").  Catalanotto also worked in the office during the December to January period.  On February 1, 2007, Catalanotto hired plaintiffs to work for him at the newly formed Scott Catalanotto Insurance Agency.

As discussed in greater detail below, plaintiffs allege that from the start Catalanotto engaged in an ongoing practice of offensive, inappropriate, and harassing conduct including, *inter alia*, making inappropriate comments during office Bible study meetings, showering at the office, wearing gym clothes at the office, and discussing his marital problems with his employees.  Both plaintiffs eventually resigned their positions at Catalanotto's office.

In December 2008, the Court dismissed McGehee's claims[1] under 42 U.S.C. § 1985(3) and her state negligence claims against both State Farm and Catalanotto, and also dismissed her claims against Catalanotto under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*, ("Title VII") . (Rec. Doc. 37).  Nobles's case has since been consolidated with McGehee's.  Plaintiffs' remaining claims, the subject of the instant motions, are for violations Title VII against State Farm and for intentional infliction of emotional distress ("IIED").

## II. Law and Analysis

*a. Motion to Strike*

As a preliminary matter, the Court must determine the admissibility of the challenged affidavits, handwritten statements, and experts's affidavits submitted by the plaintiffs in support

---

[1] Nobles's case was not yet consolidated when the motion to dismiss was filed.

of their oppositions to the motions for summary judgment. (Rec. Docs. 116-5, 116-6, 116-15, 116-16).

*i. Plaintiffs' Affidavits*

Defendants argue that Federal Rule of Civil Procedure 56(e)(1) prohibits the Court from admitting portions of plaintiffs' affidavits. That Rule provides:

> (e) Affidavits; Further Testimony.
> (1) In General. A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Assertions in affidavits that do not include sufficient factual support to show that the affiant possesses that knowledge may be stricken. *Amie v. El Paso Independent School Dist.*, 253 Fed. Appx. 447 (5th Cir. 2007). Conclusory allegations are insufficient. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

Defendants highlight specific paragraphs in the affidavits that they argue do not meet the above standard. (Rec. Doc. 127-1). The Court agrees that the majority of paragraphs in the affidavits are legal conclusions or beyond the scope of plaintiffs' knowledge, and non-compliant with the requirements of Rule 56. Some few paragraphs, though perhaps mixed with non-factual conclusions, are undoubtedly within plaintiffs' knowledge, and are appropriate for a Rule 56(e) affidavit. As this is a summary judgment motion and the affidavits at issue will not be presented to the jury, the Court will not engage in a line-by-line analysis of the admissibility of each paragraph. Suffice it to say, to the extent the paragraphs at issue are non-compliant, they will not be considered. The paragraphs the Court finds relevant and necessary to the deciding the

3

summary judgment motions will be discussed in greater detail below. Defendants Motion to Strike is therefore DENIED.

### ii. *Handwritten Statements and Experts' Affidavits and Reports*

Defendants argue that McGehee's handwritten notes should be stricken as not properly authenticated.[2] (Rec. Doc. 127-1 at 6). Plaintiffs have since submitted a notarized affidavit attesting that the notes are hers. (Rec. Doc. 136-3 at 1). As with the affidavits discussed above, the Court will consider the contents of the notes only for their factual assertions within the scope of McGehee's knowledge. The defects in plaintiffs' experts' affidavits and reports have been similarly remedied. (Rec. Doc. 136). Defendants' Motion to Strike is DENIED.

### b. *Summary Judgment Standard*

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also, Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it

---

[2] Presumably defendants do not challenge Nobles's notes because she appears to have authenticated her handwritten statement during her deposition. (Rec. Doc. 116-9 at 38).

4

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

Plaintiffs argue that caselaw mandates a heightened standard of review for cases alleging employment discrimination. (Rec. Doc. 115-3 at 6). They cite *Crawford v. Runyon*, 37 F.3d 1338 (8th Cir. 1994) and related cases for the proposition that employment cases seldom merit summary judgment because they often turn on inferences rather than on direct evidence. (Rec. Doc. 115-3 at 6).

The cases cited, however, are entirely Eighth Circuit cases, and do not inform this Court's standard of review. The Fifth Circuit has not suggested that an alternative standard of review applies in employment discrimination cases; the Court will abide by the standard set forth above. *See La Day v. Catalyst Technology, Inc.*, 302 F.3d 474 (5th Cir. 2002) ("The court must consider both direct and circumstantial evidence but may not make 'credibility assessments' which are the exclusive province of the trier of fact").

 *c. State Farm as Plaintiffs' Employer*

State Farm argues that plaintiffs were only employees of State Farm between December

5

1, 2006 and January 31, 2007. After that point, it argues, they became employees of Catalanotto, who was an independent contractor. This distinction is relevant for determining State Farm's potential liability under Title VII.

Under controlling Fifth Circuit precedent, to determine whether an employment relationship exists within the meaning of Title VII, the Court must apply the "hybrid economic realities/common law control test." *Deal v. State Farm County Mut. Ins. Co. of Texas*, 5 F.3d 117, 118-19 (5th Cir. 1993). Under that test, the most important factor is the right to control an employee's conduct, including the right to hire and fire, the right to supervise, and the right to set work schedules. *Id.* at 119. The Court must also examine whether "the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.*

Plaintiffs argue that State Farm retained "complete and thoroughgoing control" of Catalanotto's office, even after the February 1, 2007, transfer. (Rec. Doc. 116-3 at 14). They suggest that because Catalanotto was an insurance "neophyte" who had to get "guidance on even the minutiae of his operations" he was not, in fact, in control. (Rec. Doc. 116-3 at 16). They point to deposition testimony of State Farm employee Robert England, who stated that he came to Catalanotto's office to discuss the plaintiffs' complaints. (Rec. Doc. 116-3 at 17 n.33).

Plaintiffs' attempts to distinguish the controlling precedent on this question are unpersuasive. Ineffective management practices do not alter the contractual arrangements at the heart of this circuit's economic realities/common law control test. By discussing Catalanotto's alleged incompetence and the relationship between Catalanotto and State Farm (instead of between plaintiffs and Catalanotto), plaintiffs distract from the reality that Catalanotto, not State

6

Farm, had the relevant authority over Nobles and McGehee after February 1, 2007. Per Catalanotto's agreement with State Farm, he was responsible for the "recruitment, selection, compensation, management, and control of [his] staff." (Rec. Doc. 102-8 at 3). Thus, like the employee in *Deal*, starting in February 2007 the plaintiffs had an employment relationship with Catalanotto, not State Farm. 5 F.3d at 119.

### d. Title VII Claims

Plaintiffs allege a hostile work environment under Title VII. To succeed, plaintiffs' claims must demonstrate:

> (1) The employee belongs to a protected group, i.e., a simple stipulation that the employee is a man or a woman;
> (2) The employee was subject to unwelcome sexual harassment, i.e., sexual advances, request for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee;
> (3) The harassment complained of was based upon sex, i.e., that but for the fact of her sex, the plaintiff would not have been the object of harassment;
> (4) The harassment complained of affected a "term, condition or privilege of employment," i.e., the sexual harassment must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment;
> (5) Respondent superior, i.e., that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Jones v. Flagship Intern.*, 793 F.2d 714, 19-20 (5th Cir. 1986). When the alleged harasser has supervisory authority over the employee, proof of the fifth element is unnecessary. *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir.1999). For harassment to affect a term, condition, or privilege of employment–the fourth element of the test–, it must be both objectively and subjectively abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). This is determined by a totality of the circumstances including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive

utterance; (4) whether it unreasonably interferes with an employee's work performance, and (5) whether the complained-of conduct undermines the plaintiff's workplace competence. *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 325-26 (5th Cir. 2004). Further, it must be either severe *or* pervasive; proof of both is not required. *See Paul v. Northrop Grumman Ship Systems*, 309 Fed. App'x 825, 828 (5th Cir. 2009).

Title VII claims are limited to those brought against employers with more than fifteen employees. 42 U.S.C. 2000(e)(b). Because the Court holds that plaintiffs were employees of Catalanotto, and not State Farm, after February 1, 2007, and because Catalanotto had fewer than fifteen employees, the Court's Title VII inquiry is limited to the two month window between December 1, 2006 and January 31, 2007. (Rec. Doc. 37).

As drawn from plaintiffs' depositions, affidavits, and briefs, the allegations that fall within this window are as follows[3]:

1. While State Farm was plaintiffs' employer, Catalanotto suggested holding office-wide Bible study meetings each morning from approximately 8 to 8:30 a.m. (Rec. Doc. 116-16 at 3). Catalanotto chose the sections of the Bible to study, and selected the first chapter of Corinthians as the first topic. Catalanotto used references to sex in Corinthians as a means to bring up in discussion his enjoyment of strip clubs and night clubs. (Rec. Doc. 116-9 at 37).

2. Catalanotto on occasion slept at his office, making use of a pull-out bed he kept there, and showering in a bathroom that adjoined his office. (Rec. Doc. 116-8 at 19, 35).

3. Catalanotto at times wore athletic clothes or undershirts in the presence of his female

---

[3] To some extent the precise timeline of events has not been clearly demonstrated in the pleadings. The Court will err on the side of being overinclusive.

employees. (Rec. Doc. 116-9 at 55) ("he was sitting at his desk with a little bitty tank top on, which I found to be offensive").

4. On one occasion, Catalanotto allegedly followed Nobles around the office asking her questions when they were both in the office after hours. (Rec. Doc. 116-5 at 2).

4. After Nobles's husband sent her flowers at work for her anniversary, Catalanotto called her after work to ask if she was going to bring her flowers home. When she answered in the negative, he suggested that she "tell everybody [he] gave them to [her]." (Rec. Doc. 116-9 at 55).

5. Catalanotto repeatedly remarked upon his unhappy marriage and his need for marriage counseling. (Rec. Doc. 116-9 at 55). This led at some point to his commenting that the means to keeping a woman happy was "giv[ing] her sex all the time." (Rec. Doc. 116-9 at 55).

6. In either January or March 2007, Catalanotto commented to McGehee, in the presence of his sister-in-law, that he enjoyed working with women "because they smelled so good." (Rec. Doc. 116-8 at 30; Rec. Doc. 116-6 at 1-2).

Together, these allegations, assumed for the purposes of this motion to be true, which all took place in or a near a two month window, demonstrate that Catalanotto was a crass and insensitive manager with little concept of appropriate work place behavior. Viewing the facts in the light most favorable to the plaintiffs, they do not, however, constitute a Title VII violation. The Court holds, based on a consideration of all of the circumstances, that Catalanotto's conduct did not render plaintiffs' work environment objectively "hostile" or "abusive."

Fifth Circuit caselaw is illustrative. In *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871 (5th Cir. 1999), Shepherd alleged that over the course of almost two

9

years, her co-worker made a series of inappropriate and harassing comments and actions, including (1) standing over her desk and remarking "your elbows are the same color as your nipples"; (2) remarking "you have big thighs" while simulating looking under her dress; (3) standing over her desk and attempting to look down her clothing; (4) rubbing her arm from her shoulder to her wrist; (5) patting his lap and saying "here's your seat." 168 F.3d at 872. The court held that while the comments were "boorish and offensive," they were not severe. Each was "the equivalent of a mere utterance of an epithet that engender[s] offensive feelings." *Id.* at 874. They noted that none of the comments or actions was physically threatening, and none interfered with Shepherd's workplace competence. *Id.*

Similarly, in *Hockman* the employee alleged that her co-worker, Rogers, engaged in the following harassment:

> First, Rogers commented on the body of a former Westward employee, Sheila Ledesma. Specifically, Hockman claims that "[Rogers] would tell her that Sheila Ledesma had a nice behind and body." Next, Hockman claims that beginning in July of 2001, Rogers would brush up against her breasts and behind. Third, Hockman claims that on one occasion, Rogers "slapped [her] behind with a newspaper." Fourth, Rogers once attempted to kiss Hockman. Fifth, on more than once occasion, Rogers asked Hockman to come in early so that they could be alone together. Finally, Rogers once stood in the doorway of the ladies' restroom as Hockman was washing her hands. Rogers stepped aside, however, when Hockman exited the restroom.

407 F.3d at 321-22. The court found the actions described above to be less severe than those in *Shepherd*, and held that Roger's harassment was nonsevere and nonpervasive. *Id.* at 326.

By contrast, in *Farapella-Crosby v. Horizon Health Care*, 97 F.3d 803, 805 (5th Cir. 1996), comments were held to be frequent and severe enough to sustain a jury verdict for the plaintiff. There, the plaintiff's supervisor made frequent comments "attributing Farpella-Crosby's large number of children to a proclivity to engage in sexual activity." *Id.*

10

This included joking that she did not know how to use a condom and inquiring about her sexual activity two to three times a week. On one occasion, after Farapella Crosby ate lunch in her office with her boyfriend, the supervisor said "when you open the door [to the office], the smell of fish just hits you in the face. You shouldn't be doing that kind of think at work." *Id.*

The instant allegations are much more similar to those in *Shepherd* and *Hockman* than those in *Farapella-Crosby*. Indeed, the behavior by the defendants in *Shepherd* and *Hockman* was generally more severe than Catalanotto's. Here, no single comment by Catalanotto was objectively physically threatening, and each is, at worst, the equivalent of a mere utterance of an offensive epithet. *See Shepherd*, 168 F.3d at 874. The comments during Bible study were about Catalanotto's own preferences, and there is no evidence that they were directed at either plaintiff directly. The comment about Nobles's flowers, though directed at her specifically, cannot be characterized as severe. Finally, the comments about "giving women sex" and about women smelling "good," do not approach the severity or pervasiveness of the *Farapella-Crosby* facts. The lap invitation in *Shepherd* and the early morning propositions in *Hockman* were more direct and more plaintiff-specific, yet both courts found them insufficient to withstand summary judgment.

As for Catalanotto's actions, they too were comparable to or more mild than the facts in *Shepherd* and *Hockman*. Catalanotto's standing inappropriately close to Nobles when she returned late to the office is similar to the *Hockman* defendant's standing in the doorway of the women's restroom. His showering in the office, sleeping at the office, and wearing athletic clothes in the office pales in comparison to attempts to look up or down dresses, brushing up against body parts, slapping behinds, and attempted kissing.

11

In sum, under Fifth Circuit caselaw, plaintiffs' facts are insufficient to meet the Title VII requirement that the alleged discrimination affect a "term, condition or privilege of employment." The facts presented do not demonstrate severe or pervasive discrimination. State Farm's Motion for Summary Judgment is therefore GRANTED as to the Title VII claims.

   *e. Intentional Infliction of Emotional Distress*

The sole remaining claim is the IIED claim. To prevail, plaintiffs must show (1) that the conduct of the defendants was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Id.*

To evaluate this claim, the Court must now include any remaining allegedly distressing conduct that occurred after the February 1, 2007, date when Catalanotto took over as an independent contractor. In addition to the December to February allegations, listed above in the "Title VII Claims" section, plaintiffs also complain of the following conduct by Catalanotto:

   1. Catalanotto wrote an email in July 2007, discovered by plaintiffs, that advised another State Farm agent that to succeed, one should "work the team" by buying them lunch, or sending them cards or flowers. (Rec. Doc. 116-9 at 35).

   2. In plaintiffs' presence, Catalanotto advised a customer that to keep his (the

customer's) wife happy he should "give her sex all the time." (Rec. Doc. 37 at 56).

3. After Mardi Gras in 2007, Catalanotto brought Nobles a "garter."[4] Per her handwritten notes, he told her "that he knew he would enjoy [her] with a garter [and] felt [her husband] would too." (Rec. Doc. 116-5 at 4).

4. "Whenever" Catalnatto had occasion to approach the plaintiffs' desks at work, he would sit uncomfortably close to them. (Rec. Doc. 116-5 at 4). This included, at times, placing his hands on their shoulders or touching their fingers. (Rec. Doc. 116-5 at 4).

5. Catalanotto attempted to invite himself and his family on camping trips with plaintiffs and their families.

6. Catalanotto sent an email and/or posted photographs of himself shirtless at the beach. (Rec. Doc. 116-8 at 27; 116-9 at 51).

7. Catalanotto asked McGehee whether a local bank teller's breasts were real. (Rec. Doc. 116-8 at 27).

8. McGehee requested that Catalanotto pay for a hotel in Baton Rouge so that she could take classes necessary for her insurance license. Catalanotto refused, instead offering that she could stay at his house in Ponchatoula. (Rec. Doc. 116-8 at 29).

Considering the facts in the light most favorable to the plaintiffs, the Court concludes that the plaintiffs have not established genuine issues of material facts as to the IIED requirements under Louisiana law. Specifically, plaintiffs have not presented any factual evidence suggesting

---

[4] It in unclear from the record whether this was a Mardi Gras "throw" of the kind parade-goers can catch from floats or a separately purchased item.

13

that Catalanotto intended or desired to inflict emotional distress,[5] or that their emotional distress was severe.

The Court is not insensitive to the fact the plaintiffs' allegations demonstrate an ongoing pattern of insensitivity by Catalanotto, and that conduct which would not be outrageous when viewed isolation can become so when part of a larger campaign of harassment. *See Donalson v. Cross Offshore Corp.*, 1998 WL 566797 at *6 (E.D.La. 1998). However, even viewed in that light, plaintiffs' allegations fall well short of the "utterly intolerable" standard set forth in *White*, and are more properly characterized as "indignities" or "annoyances." This is particularly true in light of the fact that when plaintiffs aired their concerns to State Farm, the majority of their complaints focused not on the allegedly harassing conduct, but rather on Catalanotto's management style and general ineptitude. (Rec. Doc. 116-9 at 155-65; Rec. Doc. 116-8 at 89-96).

Accordingly,

IT IS ORDERED that Defendants' Motion to Strike is DENIED. The Motions for Summary Judgment by State Farm and Catalanotto are both GRANTED. Defendants' Motions in Limine are now MOOT.

New Orleans, Louisiana, this 26th day of April, 2010.

---

[5] As discussed above, the Court is considering plaintiffs' affidavits and notes only for their specific factual assertions; "unsubstantiated assertions" and "conclusory allegations" cannot form the basis of genuine issues of material fact.

14

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**